J-A09023-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.E.N., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: K.E.N. | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 638 WDA 2023 |

Appeal from the Dispositional Order Entered May 5, 2023
In the Court of Common Pleas of Warren County Criminal Division at
No(s):  CP-62-JV-0000039-2022

BEFORE:  DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED: June 6, 2024**

Appellant, 13-year-old K.E.N., appeals from the dispositional order following his delinquency adjudication of indecent assault (complainant less than 13 years of age).[1]  Appellant argues that the Commonwealth's failure to allege the date of the offense with sufficient particularity prevented him from mounting a proper defense, thereby violating his right to due process. Separately, Appellant challenges the sufficiency of the evidence.  After careful review, we affirm.

The record discloses the following factual and procedural history. Appellant was approximately 12 years old at the time of the incident.  He resided with his mother and his mother's roommate in the bottom floor of a two-bedroom duplex.  The complainant, O.W., is Appellant's cousin.  The

---

[1] 18 Pa.C.S.A. § 3126(a)(7).

complainant had just turned 4 years old at the time of the incident. In the time leading up to the incident, the complainant's family visited Appellant's home fairly often. Appellant's mother is the aunt of the complainant's mother. The complainant's mother was friends with the roommate, as well. The complainant's other family members consisted of her father and younger sister.

The assault occurred in Appellant's bedroom. Appellant's bedroom was connected to both the living room and the kitchen. While there was a door between Appellant's bedroom and the kitchen, there was apparently no door between Appellant's bedroom and the living room; instead, a flag was draped over the threshold.

In February or March 2022, Appellant was in his bedroom with the complainant and the complainant's younger sister. Appellant's mother and the complainant's mother were in the kitchen; the door between the kitchen and Appellant's bedroom was closed. The complainant's father was on the couch in the living room, scrolling through his phone. The roommate was in her room. No other people were there.

According to the complainant, Appellant pulled down her pants and touched her "kookaburra" (the term she used for vagina) "inside her underwear," with his fingers. *See* N.T., 2/16/203, at 12, 14-15.[2] The

---

[2] As discussed below, the juvenile court inquired into the complainant's competency. Afterward, the Commonwealth moved to qualify her as a competent witness, and Appellant's counsel did not object. *See* N.T. at 9.

complainant could see her father "under the curtain" in the living room, which we take to mean that she saw him underneath the flag separating the two rooms. *Id.* at 21. The complainant said that there was a noise and her father "flew into the bedroom;" the father later testified that he went into the room after he heard the complainant say "my pants" in a distressed tone. *Id.* at 17. The complainant said that Appellant already pulled her pants back up by the time the father entered the bedroom. The father observed them about five feet apart and fully clothed. The father decided it was time to leave, and the complainant, her sister, and her mother left the house soon thereafter. *Id.* at 31.

The complainant's father did not tell her mother about the incident for several months – until June or July 2020 – and only after her mother mentioned that the complainant's behavior was out of the ordinary. The complainant's mother had been bathing the complainant alongside her sister. After the bath, the sisters wrestled around, but were still naked. The mother said something "like, [']we don't touch private areas, let's get some underwear on,['] and [the complainant] closed down." *Id.* at 49. The complainant was upset, and her mother asked if somebody touched her there. The complainant was silent, so her mother began naming males who could have been in close contact. The list began with Appellant, and then Uncle [V.], Uncle [M.], Uncle [S.], and Uncle [J.]. The complainant said no to the uncles. When her mother again asked whether Appellant touched her, the complainant said yes and demonstrated where. *Id.* at 52. When her mother brought this to the

attention of her father, a "lightbulb went off in his head" and he remembered the incident where he heard complainant say "my pants" from Appellant's bedroom. *Id.* at 54.

The precise date of the incident is unknown, as was the exact date of the disclosure. *See id.* at 42-43. In any event, the complainant's mother said she told the police that the incident happened in either November 2021 or February 2022. *Id.* at 69. However, the charging information alleged that the offense took place "on or about March 2022."

In August 2022, Warren Police filed a writ of allegation and eventually a petition alleging delinquency. The petition indicated that the date of the offense was July 2022 (which was when the police were first contacted), but the writ indicated that the incident occurred "on or about March 2022." In October 2022, a notice of juvenile adjudication was scheduled. After several continuances, the court held the adjudicatory hearing on February 16, 2023. The juvenile court adjudicated Appellant delinquent, but it deferred disposition until Appellant completed a psychosexual evaluation. The court held a dispositional hearing on May 4, 2023, and placed him on intensive supervision for a period of time not to exceed five years.

Appellant timely filed this appeal, and he presents the following issues for our review:

> 1. Whether [Appellant's] right to due process, guaranteed by both the Fourteenth Amendment of the United States Constitution and Article I, § 9 of the Pennsylvania Constitution, were violated by the

Commonwealth's failure to fix within a reasonable certainty the date of the alleged offense?

2. Whether the evidence was insufficient to support [Appellant's] adjudication of delinquency beyond a reasonable doubt as the Commonwealth failed to prove [that Appellant was] the perpetrator of the alleged offense beyond a reasonable doubt?

Appellant's Brief at 3 (style adjusted)

We begin with Appellant's first issue. A question regarding whether a due process violation occurred is a question of law for which the standard of review is *de novo* and the scope of review is plenary. ***Commonwealth v. Tejada***, 161 A.3d 313, 317 (Pa. Super. 2017) (citing ***Commonwealth v. Smith***, 131 A.3d 467, 472 (Pa. 2015)).

It is the duty of the prosecution to "fix the date when an alleged offense occurred with reasonable certainty…." ***Commonwealth v. Brooks***, 7 A.3d 852, 857-58 (Pa. Super. 2010) (citation omitted). "The purpose of so advising a defendant of the date when an offense is alleged to have been committed is to provide him with sufficient notice to meet the charges and prepare a defense." ***Brooks***, 7 A.3d at 858 (citing ***Commonwealth v. Gibbons***, 784 A.2d 776 (Pa. 2001)).

Our Supreme Court explained that the Commonwealth's inability to "fix" the date of the offense in its prosecution of an alleged crime implicates the defendant's rights to due process. ***See generally Commonwealth v. Devlin***, 333 A.2d 888, 890-92 (Pa. 1975); ***see also Commonwealth v. Levy***, 23 A.2d 97 (1941). Under the Federal Constitution, if the opportunity

to defend is inadequate, the defendant is denied due process of law. ***Devlin***, 333 A.2d at 891 (citation omitted). Additionally, Article I, Section 9 of Pennsylvania's Constitution is violated where the defendant is substantially denied an opportunity to present a defense. ***Devlin***, 333 A.2d at 891 (citation omitted). ***Id.*** (citations omitted). When the prosecution does not or cannot allege, with sufficient particularity, the date of the alleged crime, the accused is denied an opportunity to mount a defense and thus deprived of their right to due process. ***Id.*** at 890-91 (some internal citations and quotations omitted).

However, "due process is not reducible to a mathematical formula," and the Commonwealth does not always need to provide a specific date of an alleged crime. ***Brooks***, 7 A.3d at 858 (quoting ***Devlin***, 333 A.2d at 892). Pennsylvania Rule of Criminal Procedure 560(B)(3) states that it shall be sufficient for the Commonwealth to allege that an offense was committed "***on or about*** any date within the period fixed by the statute of limitations" if the precise date is not known. Pa.R.Crim.P. 560(B)(3)(emphasis added).

In ***Devlin***, for instance, the Commonwealth alleged throughout its prosecution that the sex crime offense occurred in April 1972. Notably, the charging information and the indictment was inaccurate from the beginning; the alleged victim approached law enforcement on April 14, but the detective's charging information and the subsequent indictment alleged that the offense occurred on April 16. At the trial, the alleged victim (an adult with intellectual disabilities) could not testify with accuracy when the alleged offense took place

– not the time of year, month, day, or date.  Other Commonwealth witnesses, however, established that there was a continuing relationship between the alleged victim and the defendant from February 1971 until the crime was reported on April 14, 1972 – a timespan of fourteen months. *See Devlin*, 333 A.2d at 889.  The trial judge ruled that the jury could find that the offense occurred at any point in that fourteen-month timespan, because the timespan occurred within the five-year statute of limitations.  *Id.* at 890.

On appeal, the Supreme Court concluded that the fourteen-month timespan was "such an egregious encroachment upon the [defendant's] ability to defend himself that we must reverse." *Id.* at 892.  The Court observed that it could not "enunciate an exact degree of specificity in the proof of the date of a crime which will be required or the amount of latitude which will be acceptable." *Id.*  But it noted that "[a]ny leeway permissible would vary with the nature of the crime and the age and condition of the victim, balanced against the rights of the accused." *Id.*

Here, Appellant argues that the Commonwealth's failure to fix the date of the offense with sufficient particularity prevented him from mounting a proper defense.  According to Appellant, the Commonwealth maintained throughout the pendency of the delinquency proceedings that the incident occurred in March 2022, but once the Commonwealth's witnesses started testifying that the incident occurred as early as mid-February 2022, then the Commonwealth suddenly relied upon a more elastic timeframe.  *See*

- 7 -

Appellant's Brief at 9-10. Appellant concludes that he was thrown a curveball. *Id.* at 10.

Our review of the record indicates that the Commonwealth could not fix, with precision, the exact date of the offense. The complainant's father testified that the incident occurred: "approximately the end of February;" and "this was a few weeks after the Super Bowl," which occurred on February 13, 2022. *See* N.T. at 32. On cross-examination, he testified that "it would have been the end of February, beginning of March at the latest," but when pressed, he said his guess was that it was the end of February. *Id.* at 41. The father also said that his immediate family members were the only ones visiting Appellant's household, which included Appellant, Appellant's mother, and the roommate. No other guests were there.

By contrast, the testimony of the complainant's mother was much more disjointed. The mother testified that she initially told the police: "I told them that I couldn't remember if it happened in November or February, but I would have to know if [Appellant's mother's roommate] was living there, and if [the roommate] was living there, then it happened in February." *Id.* at 69. She associated the incident with football season because Appellant's mother would host get-togethers. She used the roommate's presence as an indicator, because the roommate could not have been present in November 2021; thus, the mother said she was able to surmise that the incident occurred in February 2022. *See id* at 69-71.

From there, the testimony of the complainant's mother began to conflict somewhat with the father's testimony. The mother said that she was only at Appellant's home once in February; but the February visit she described was different from the one the father described. The mother testified that they held a joint birthday party for the complainant and the complainant's sister, that the party would have taken place between the girls' birthdays, which occurred in the first and third weeks of the February. The Super Bowl occurred on February 13, but the complainant's father testified that the incident occurred a few weeks after the Super Bowl. *See id.* at 71-72. The mother then testified that she must have gone back to Appellant's home with her daughters after the birthday party. *Id.* at 73.

Appellant's counsel elicited a concession from the mother that she did not really know the date of the incident after the complainant's disclosure. *See id.* at 74 ("There was like three months that I was bouncing around with[.]"). But then the mother said, after talking to the complainant's father, "we were able to narrow it down because after March we did go back for a birthday party, but we were outside for my Uncle [J.] and that was like the end of March, April, but I know after April we never went back." *Id.* at 74-75.

After the complainant's mother testified, the Commonwealth rested, and Appellant called his adult brother. Appellant's brother testified that he was there on the date of the alleged incident, refuting the testimony of the complainant's mother. *See id.* at 78 *cf. id.* at 81. Appellant's brother

explained that he was there for the complainant's birthday party, as were other members of the extended family and neighborhood children. *Id.* at 82. Appellant's brother said he remembered the day, because it was an unseasonably warm March day, and that everyone gathered outside, except for when the family opened gifts inside. *Id.* at 83-84. The inference being that the complainant was never alone with Appellant inside his bedroom and that there were other potential perpetrators around.

Appellant's brother's testimony corresponded with the complainant mother's testimony, except that the dates of the parties do not exactly match. Both noted the complainant's combined birthday party, but Appellant's brother thought the party was in March, whereas the complainant's mother testified that the March party was for an uncle, not her daughters. Moreover, the testimony of the complainant's father and mother do not exactly match either. The father testified that the incident took place when only his immediate family were at the Appellant's home, not during one of the family birthday parties or during a football get-together.

The question we must resolve is not whether the Commonwealth proved its case, but whether the lack of a precise timeline deprived Appellant of the opportunity to mount a proper defense. Appellant claims he was "prepared to, and did effectively, meet the prosecutions charge – that some unlawful conduct was committed by [Appellant] in March 2022." *See* Appellant's Brief at 10. Appellant argues that the prosecution threw him a curveball when it

introduced allegations that the offense might have occurred in February 2022.
*Id.*

We do not agree that Appellant was deprived of an opportunity to mount a defense. The Commonwealth alleged that the offense occurred "on or about March 2022." Even if the month of March was to be strictly enforced, the complainant's father testified that the incident very well might have occurred the first week of March, and the juvenile court could have properly relied on this timeframe.

The sum total of witnesses' testimony established that the offense could have occurred between mid-February and the end of March, roughly a six-week timeframe. It was difficult to establish an exact date, given the context of this case – the young age of the complainant, and the frequency with which the two families got together, at the location of where the offense took place. Nonetheless, we conclude that the six-week timeframe properly fit within the "on or about March" date fixed by the Commonwealth. The Commonwealth's date was sufficiently narrow to give Appellant notice to enable him to mount a defense. *See Devlin*, 333 A.2d at 892; *see also* Pa.R.Crim.P. 560(B)(3).

Appellant was able to introduce doubt, *via* cross-examination and through his case-in-chief, as to whether the assault took place, or – if it did – whether the perpetrator could have been another person.[3] Additionally,

_____

[3] Whether that doubt constituted "reasonable doubt" depended on whose testimony the juvenile court believed, and whether the court believed such
*(Footnote Continued Next Page)*

Appellant was able to extract testimony from the complainant's mother that there had been a falling out between the mother and Appellant's family in June or July 2022, around the time that the mother notified the police of her daughter's disclosure. Appellant used this information to suggest that the complainant's mother had a motive for coaching the complainant into making a false accusation.

The success of this defense – stemming from the brother's testimony and the suggestion that complainant's mother had a motive – depended upon the juvenile court's witness credibility assessments. Ultimately, the juvenile court was not convinced by Appellant's defense, but this does not mean that the Commonwealth's use of an approximate date in its charging information prevented Appellant from raising one. For these reasons, we conclude that Appellant's due process rights were not violated, and his first issue merits no relief.

In his second issue, Appellant challenges the sufficiency of the evidence. In evaluating a challenge to the sufficiency of the evidence supporting an adjudication of delinquency, our standard of review is as follows:

> When a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof beyond a reasonable doubt. When considering a challenge to the sufficiency of the evidence following an adjudication of

testimony in whole or in part. ***See Interest of D.J.B.***, 230 A.3d 379, 386 (Pa. Super. 2020) (discussed ***infra***).

- 12 -

delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth.

In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.

The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a defendant's innocence. Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth.

*Interest of D.J.B.*, 230 A.3d 379, 386 (Pa. Super. 2020) (citations omitted).

Moreover:

As an appellate court, we must review the entire record…and all evidence actually received[.] [T]he trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence. Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary.

*D.J.B.*, 230 A.3d at 386 (citations omitted).

For our purposes, a juvenile may be adjudicated delinquent of indecent assault if he "has indecent contact with the complainant" and "the complainant is less than 13 years of age." *See* 18 Pa.C.S.A. § 3126(a)(7). "In addition to proving the statutory elements of the crimes charged beyond a reasonable

doubt, the Commonwealth must also establish the identity of the defendant as the perpetrator of the crimes." **Brooks**, 7 A.3d at 857.

In the case before us, Appellant argues that complainant did not sufficiently identify him as the perpetrator during the delinquency hearing. The proceeding began with an examination of the complainant's competency. At the time of the incident, the complainant had just turned 4 years old, the disclosure occurred several months later, and the delinquency hearing took place almost exactly a year later. At the hearing, the complainant told the judge that she was 5, and that her birthday was "right now." **See** N.T. at 4. The judge asked whether she meant that day, and the complainant explained that it already happened. The judge then asked whether the complainant knew what day it was, and the complainant said she did not know. **Id.** at 5.

The judge then tried to understand whether the complainant knew the difference between a truth and a lie. The judge noted the complainant's necklace (which was multicolored). The judge asked the complainant whether it would be a lie if she said the necklace was black. The complainant said it would be a lie. When asked why she knew it a lie was, the complainant said she did not know. **Id.** at 5-6. The judge tried the example again with her judicial robe, and the complainant answered that it would be the truth if the judge said her robe was black. **Id.** at 6-7. When asked, the complainant said she felt bad when she told a lie and good when she told the truth. **Id.** at 7. Appellant's counsel asked similar questions, and the complainant restated that she felt good when she told the truth and bad if she lied. At that point, the

- 14 -

judge asked if there was a motion to find the complainant competent to testify. The Commonwealth so moved, and Appellant's counsel stated that he did not object. *Id.* at 9.

Immediately after qualifying the complainant as a competent witness, the Commonwealth attempted to have her identify Appellant. She said she recognized him but did not know his name:

| | |
|---|---|
| Commonwealth: | Do you know this boy [(referring to Appellant)] over here in the pink shirt? |
| Complainant: | Yeah. |
| Commonwealth: | And how do you know him? Do you know his name? |
| Complainant: | No. |
| Commonwealth: | You don't know his name? |
| Complainant: | Yeah. |
| Commonwealth: | Oh, you do? |
| Complainant: | No. |
| Commonwealth: | No. Okay. |

*Id.* at 11.

The Commonwealth then redirected the complainant, reminding her of the difference between truths and lies, and the reason why she was there that day. *Id.* at 12. The Commonwealth decided to elicit testimony about what happened and where the complainant was touched before circling back to identification:

- 15 -

Commonwealth: Do you know – you said someone touched your kookaburra. Who touched your kookaburra?

Complainant: [Appellant].

[...]

Commonwealth: And who is [Appellant]?

Complainant: From Aunt [J.'s.].[4]

Commonwealth: From Aunt [J.'s]?

Complainant: Yeah.

Commonwealth: And is Aunt [J.] and [Appellant] family?

Complainant: Yeah.

*Id.* at 12-13 (footnote added).

During cross-examination, Appellant's counsel addressed the identification issue:

Counsel: Is – do you see the [name of Appellant] that touched your kookaburra?

Complainant: Yeah.

Counsel: In the room?

Complainant: Yeah.

Counsel: You do?

Complainant: Yeah.

Counsel: Okay.

The court: Where is he?

Complainant: Him far away.

Counsel: Right now, do you see him right now?

_____

[4] Aunt [J.] is Appellant's mother.

- 16 -

Complainant: No.

*Id*. at 20.

During re-direct examination, the Commonwealth attempted unsuccessfully to seek clarification:

| | |
|---|---|
| Commonwealth: | [Complainant,] you were asked if you saw [Appellant] in the courtroom today and you said yes. Okay. You don't have to – it's okay, you don't have to look at him, but you can tell us, if he's in the courtroom, what color shirt he's wearing? |
| Complainant: | I mean, I don't see him in the courtroom. |
| Commonwealth: | You don't see him? |
| Counsel: | And, Your Honor, I'm sorry to interrupt that was my recollection of the testimony as well was that she said she did not see him in the courtroom. |
| The court: | She actually said at different points that she saw him in the courtroom and said she didn't and – but then she said again she did. So it's gone both ways on that. Thank you. |

*Id.* at 25.

On appeal, Appellant cites these excerpts, claiming that the complainant failed to identify him as the perpetrator, which would render the delinquency adjudication improper. **See generally** Appellant's Brief at 14-16. Initially, Appellant argues that the complainant's identification was insufficient because the complainant used Appellant's nickname. According to Appellant, the use of his nickname meant that the complainant could have been referring to an

- 17 -

entirely different individual. *See id.* at 15. Any further description of the argument could reveal Appellant's full name, in contravention of our procedure regarding juvenile litigants. The juvenile court found that the complainant's identification by nickname was sufficient to identify Appellant as the perpetrator. In our review of the record, we agree.

Also, Appellant maintains the complainant "repeatedly and unequivocally refused" to identify Appellant, in the courtroom, despite the Commonwealth's attempt to lead her. *Id.* at 13. However, the juvenile court said that the complainant **both** positively identified Appellant in the courtroom **and** said that that perpetrator was not there. *Id.* at 25; *see also* Trial Court Opinion, filed 7/31/23 at 5, ¶14.

We were not there to witness the complainant firsthand. Thus, we cannot agree with Appellant's characterization that the complainant unequivocally and repeatedly refused to identify him. Ultimately, the court ruled that the complainant identified Appellant in the courtroom but said conflicting things. The juvenile court, as factfinder, had the ability to assess witness testimony extract from it the facts of the case, especially after the court found the complainant competent to testify without Appellant's objection.

The record suggests that the complainant simply did not recognize Appellant, who was going through puberty. It had been nearly a year since they saw each other, and the complainant's parents both acknowledged that Appellant's appearance changed. By the time of the adjudication hearing,

Appellant had evidently gone through a growth spurt, had facial hair, and a buzzed haircut. **See** N.T. at 58; 104. The father said if it weren't for the fact that Appellant was next to his brother, "I never would have recognized him." **See id.** at 58.

Put plainly, there was no question who the complainant said touched her – she repeatedly said Appellant – and there was no question that Appellant was in the courtroom. At most, it seems that the five-year-old complainant did not recognize Appellant whose physical appearance had changed in the year since they last saw each other. Her failure to recognize him at first, or her trepidation in identifying him, cut against the Commonwealth's case. However, it does not merit a reversal on sufficiency grounds. The juvenile court had the authority to assess the complainant firsthand and decide whether she could or could not identify her perpetrator. The court determined that she did, and when reviewing the record in a light most favorable to the Commonwealth, we discern no error.

Finally, Appellant argues that the complainant's statements about the incident were insufficient, because they came only after her mother suggested that Appellant touched her. **See** Appellant's Brief at 15-16. In making this claim, Appellant refers to the facts surrounding the complainant's disclosure. While the complainant's disclosure was not exactly spontaneous, her mother only asked whether anyone touched her after the complainant "closed down." We further recognize that, after asking the complainant a more open-ended question, the mother then provided the complainant with a list of names,

which started and ended with Appellant's. These facts could cut against the veracity of the disclosure, but it is not for this Court to gauge the testimony. "Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth." **D.J.B.**, 230 A.3d at 386. Moreover, the assessment of witness credibility is directly within the purview of the factfinder, here the juvenile court. **Id.** We cannot hold that, under the facts of this case, the disclosure was so weak that, as a matter of law, no probability of fact could be drawn from the combined circumstances established by the record. Thus, we discern no error.

In sum, the Commonwealth's use of an approximate date in the charging information did not violate Appellant's due process rights by preventing him from raising a proper defense. Further, we conclude that Appellant's challenge to the sufficiency of the evidence merits no relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 06/06/2024