J-S62029-19

2020 PA Super 45

| IN THE INTEREST OF: D.J.B. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: D.J.B. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 896 WDA 2019 |

Appeal from the Dispositional Order Entered, May 20, 2019,
in the Court of Common Pleas of Crawford County,
Criminal Division at No(s):  JV No. 29-2019.

BEFORE:  PANELLA, P.J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

OPINION BY KUNSELMAN, J.:                   FILED FEBRUARY 24, 2020

Appellant D.J.B., age 17, appeals from the dispositional order following his delinquency adjudication of indecent assault.[1, 2]  Appellant claims his right to due process was violated when the juvenile court allegedly predetermined Appellant's delinquency during a sidebar conference.  Appellant also challenges the sufficiency of the evidence.  For the reasons below, we affirm.

The record discloses the following factual and procedural history:

On July 1, 2018, the 17-year-old complainant (A.S.) was on vacation at the Farma Family Campground in Mercer County, Pennsylvania.  At approximately 3:00 a.m., A.S. met friends on the dock of a pond.  The group

_____

[1] 18 Pa.C.S.A. § 3126(a)(1).

[2] Appellant was adjudicated delinquent by the Mercer County Court of Common Pleas, which then transferred Appellant's case for disposition to Crawford County, where Appellant resides.

comprised of a boy and a girl previously known to A.S., and Appellant, whom A.S. had never met. The boys fished off of the dock. A.S. wore a shirt and shorts, which had become wet because she went in the water. One of the boys, N.B., gave A.S. his XXL hooded sweatshirt, which was so large on A.S.'s person that she was able to pull the sweatshirt over her knees when she sat down. At some point, the other girl went back to her camper, leaving A.S. alone with Appellant and N.B. The three sat together on a bench for a time, until N.B. got up to check on the fishing poles.

A.S. testified that when N.B. walked across the dock, Appellant reached through the sleeve of the sweatshirt and began touching A.S. from her knee to her inner thigh, underneath her shorts but over her underwear. See N.T. (Adjudication Hearing), 3/8/2019, at 9, 11. A.S. pushed Appellant's arm away, but as he started to pull his hand out, he stopped for approximately a minute, and then reengaged by pulling down A.S.'s bra and felt her breasts. Id. at 9-10. A.S. mouthed the word "no" and pushed Appellant's arm away again. Id. at 13. The touching stopped. A.S. testified that she never consented to Appellant's contact. A.S. said she then stood up and walked around the dock. She remained at the dock for approximately an hour before walking to her camper and going to sleep. The following morning, A.S. told her then-boyfriend, J.P., what happened.[3]

_____

[3] We note and clarify the relationship status of J.P. and A.S., as this was an important point for the juvenile court. The two dated prior to the incident in

J.P. testified that A.S. told him she was touched inappropriately by Appellant at the dock. Id. at 24. J.P. testified further that he and Appellant exchanged messages via the Snapchat app, wherein Appellant apologized. Id. at 26. But J.P. also testified that Appellant told him the touching was consensual: "[Appellant] told me that, yes, [A.S.] - - you know, [A.S.] – or he touched [A.S.] and [A.S.] also touched [Appellant]. Id.

Pennsylvania State Trooper Tyler Craig was tasked with investigating the report made by A.S. Trooper Craig testified that he interviewed Appellant. Trooper Craig told Appellant that the reason for the interview was an alleged inappropriate contact. Trooper Craig testified that Appellant said he did not know where the allegations could have stemmed from. Id. at 30. According to Trooper Craig, Appellant eventually said that the contact was consensual and that A.S. had guided his hand to her vaginal area, over her clothes. Appellant denied to Trooper Craig that he touched A.S.'s breasts. Id. at 32. Trooper Craig testified that Appellant later admitted knowing the purpose of the interview prior their discussion. Following the testimony of A.S., J.P., and Trooper Craig, the Commonwealth rested.

---

question. At the time of the incident, J.P. testified, "We had just begun getting back together." N.T. at 23. It was unclear whether they eventually got back together, but it was undisputed that they were not a couple at the time of the adjudication hearing. When the court explained to Appellant why he found A.S. to be credible, the court noted, among other reasons: "[S]he has no incentive to lie today because she no longer has a relationship with J.P.[.]" Id. at 65-66.

Appellant began his case-in-chief by calling to the stand N.B., the boy who lent A.S. the sweatshirt and the only other witness to the incident. N.B. testified that when the three of them sat together on the bench, he also reached through the sleeve, up to his wrist, to warm his hands. Id. at 37-38. N.B. said he did so on his own, without A.S.'s invitation, but did not make contact with A.S. Eventually, N.B. got up to check on the fishing poles.

N.B. waivered in his testimony about the contact between A.S. and Appellant. At first, N.B. testified that he did not notice anything odd between them. Id. at 38. N.B. characterized the conversation between A.S. and Appellant as "[j]ust joking around and having fun, laughing." Id. at 39. N.B. also testified that he was not paying much attention to Appellant and A.S. when the contact occurred. Id. at 42. But N.B. ultimately conceded that at the end of the night, he messaged A.S.'s boyfriend, J.P., to alert him that A.S. appeared to be uncomfortable. Id. at 43. N.B. testified that he did so because he was best friends with both J.P. and Appellant, and wanted to "take both their sides." Id. N.B. concluded his testimony by stating that while he perceived A.S. to be uncomfortable at that moment, "looking back on it now, no, nobody seemed uncomfortable or anything." Id.

At this juncture in the hearing, the court called the attorneys to the sidebar for a conference:

| The Court: | I will only do this if counsel agrees, it is just an idea I have had. But, the trooper only charged one count of indecent assault. Now that we know that the vagina was not involved, I am |

wondering if we could amend the complaint to include one count of harassment and that way we can dispense with your client [(Appellant)] testifying. I do not favor that whatsoever, but that's just an idea. You have to get the trooper's approval. If you don't want to do it, just say no. Say no right now, and we will continue on.

Assistant D.A.: Do you want to talk to your client about that?

Defense Counsel: I can talk to them again, Your Honor. I can say on the record that the D.A.'s Office made a couple offers already going toward this degree and each one has been rejected so far. So I can re-ask them, but they wanted to put on their side of the story.

The Court: Let him know that this all comes down to the definition of indecent contact, any touching of the sexual or other intimate parts. So I don't know whether breast is an indecent - - in Europe, women go to the beach and expose their breasts, but I am just saying.

Defense Counsel: Not to aid the Commonwealth out, but I think my own research on that is that that would still be indecent contact.

Assistant D.A.: It is.

Defense Counsel: It is still indecent contact, Your Honor.

The Court: So, what about harassment? Again, This is only with your approval.

Assistant D.A.: I understand.

The Court: Because I have a speech already in mind for your client. The Me-Too

- 5 -

> speech, I am going to call it. This is sexual harassment that the juvenile - - again, I don't want to him to testify if he doesn't have to. It makes me uncomfortable. But, again, check with your clients. It is up to you.

Assistant D.A.:     I will leave that ball in your court.

Defense Counsel:   Ok.

N.T. at 44-46.

After the sidebar conference concluded, the court took a brief recess. No agreement was reached, and Appellant took the stand in his own defense. In Appellant's telling of the events, A.S. initially invited him to reach into the sweatshirt to warm his hands. Appellant testified that A.S. guided his hand between her thighs and over her clothes. Id. at 51. Appellant denied touching her breasts. Appellant testified that J.P. was upset with him because A.S. was touching Appellant. Id. at 53. Appellant testified further that A.S. was upset with him for telling her then-boyfriend, J.P., what happened. Id.

After both parties presented their closing arguments, the court promptly adjudicated Appellant delinquent. The court then detailed its reasoning, explaining to Appellant that the case came down to witness credibility and that the court believed the complainant, A.S. In articulating its rationale, the court referenced the Me Too Movement and asked whether Appellant had heard of it. When Appellant indicated that he had not, the court attempted to explain:

> Okay. It is a big time movement in the United States of America. And what it pertains to, or what it relates to, is sexual harassment. And some very, very, very powerful people have had their careers, lives, ruined because of

sexual harassment. And that's what the Me Too Movement is all about. It's the fact that women have basically said they have had enough and they are not taking it anymore. And so this is basically what is happening to you, okay?

Back in the day, in my day, what I feel or what I find happened was, and this is a term, "copping a feel." I don't know if you have ever heard that term or not, but what was the term back in the '80s. [The assistant district attorney] used another term, and that was "grope." So, either one is applicable here.

This comes down [...] to credibility. Whom do I believe? And the fact of the matter is, I believe [the complainant, A.S.].

[...]

Okay. Again, [Appellant], take the time to look up the Me Too Movement. Unfortunately – well, actually it is not unfortunately. I should say, fortunately, society has changed and copping a feel is no longer appropriate. And, in fact, it is a crime.

So, if you learn that lesson now as a juvenile, you won't run into this as an adult, because there are plenty of adults out there, like I said, that have had their lives just destroyed because of sexual harassment because they did not learn that society has changed.

N.T. at 65-68; see generally id. at 64-69.

After adjudicating Appellant delinquent, the trial court transferred disposition to Crawford County, where Appellant resides. The juvenile court in Crawford ordered Appellant to be placed on probation, assessed fees and costs, and allowed for community service in lieu of cash payments if such work was available. Appellant presents this timely-filed appeal. He raises two issues for our review:

> 1. Whether the juvenile court erred as a matter of law or abused its discretion in denying the juvenile due

process rights when the juvenile court had made the decision of the juvenile's [delinquency] at sidebar with the attorneys before the juvenile presented his case.

2. Whether the juvenile court erred as a matter of law or abused its discretion in determining the juvenile [to be delinquent] when the Commonwealth failed to establish sufficient evidence for indecent assault[, pursuant to] 18 Pa.C.S.A. § 3126(a)(1).

Appellant's Brief at 6.

In his first contention, Appellant generically frames the issue as a violation of his right to due process, in that the court's lack of impartiality deprived him of a fair trial. See Appellant's Brief at 11. Appellant identifies the aforementioned sidebar as the moment of error – that is, the moment when the court predetermined his culpability. "The judge in this trial states [at the sidebar] that he was ready to give his 'Me Too' speech." Appellant's Brief at 12. As evidence of the court's bias, Appellant directs us to the transcript where the court did, in fact, reference the Me Too Movement following the adjudication. Id.; compare N.T. at 44-46 (sidebar) with N.T. at 64-69 (announcement of adjudication), supra.

In its Pa.R.A.P. 1925 opinion, the juvenile court also directs us to the transcript: "Not only does this court flatly deny making such a decision at sidebar, a review of the transcript from the hearing reveals absolutely no such thing." See T.C.O., 7/23/19, at 1* (not paginated).

The Commonwealth argues that Appellant waived this issue, because he did not preserve it by seeking the court's recusal during the sidebar

conference. See generally Commonwealth's Brief at 10-12. While we agree that Appellant should have raised the issue at the sidebar if he detected the court's bias, we also recognize that Appellant may not have believed that the juvenile court predetermined his delinquency until after the court announced its decision, and gave the very same "Me Too" speech it alluded to at the sidebar. Thus we conclude that Appellant preserved the issue by including it in his concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b).

We review challenges to a court's partiality for an abuse of discretion. See Commonwealth v. McCauley, 199 A.3d 947, 950 (Pa. Super. 2018). Both our Supreme Court as well as the Supreme Court of the United States have addressed how a judge's partiality cuts directly to an individual's right to due process:

> It is axiomatic that a fair tribunal is a basic requirement of due process. [See] U.S. Const. Amend. XIV. The United States Supreme Court has recognized that a litigant's due process rights are violated when the circumstances of a judicial decision give rise to an unacceptable risk of actual bias. Williams v. Pennsylvania, --- U.S. ---, 136 S.Ct. 1899, 1908 (2016). Moreover, the appearance of bias or prejudice can be as damaging to public confidence in the administration of justice as the actual presence of bias or prejudice. Commonwealth v. Goodman, 311 A.2d 652, 654 (Pa. 1973).
>
> However, simply because a judge rules against a defendant does not establish any bias on the part of the judge against that defendant. Commonwealth v. Travaglia, 661 A.2d 352, 367 (Pa. 1995). Along the same lines, a judge's remark made during a hearing in exasperation at a party may be

characterized as intemperate, but that remark alone does
not establish bias or partiality.

McCauley, 199 A.3d at 950-951 (some citations and quotations omitted).

In practice, "[d]iscretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." Commonwealth v. Goldman, 70 A.3d 874, 879 (Pa. Super. 2013) (quoting Commonwealth v. Widmer, 744 A.2d 745, 753 (Pa. 2000).

We conclude that the juvenile court's comments referencing the Me Too Movement did not establish partiality or bias, and thus the court committed no abuse of discretion. At sidebar, the juvenile court merely asked the attorneys to consider whether they might amicably agree to a lesser charge of harassment, presumably under 18 Pa.C.S.A. § 2709(a).[4] See also N.T. at 44-45. In broaching the idea of the lesser harassment charge, the court explained, for the benefit of both Appellant and the Commonwealth (and thus the complainant), that if an agreement were to be reached, the court would

_____

[4] "A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person: (1) strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same; [or] (3) engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose." 18 Pa.C.S.A. § 2709(a)(1), (3). "Course of conduct" is defined as: "A pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct. The term includes lewd, lascivious, threatening or obscene words [...] or actions[.]" 18 Pa.C.S.A. § 2709(f).

address Appellant and contextualize the facts within the Me Too Movement. By revealing what it would say to Appellant, the court allowed the parties to make an informed calculation about how to proceed. Evidently, Appellant declined the offer, electing instead to share his side of the story with the court. Id. That the court then referenced the Me Too Movement, after considering Appellant's account of the events, after finding the complainant-witness to be more credible, and ultimately after adjudicating Appellant delinquent, does not evince the court's partiality or the appearance thereof. Appellant's first issue is meritless.

In his second issue, Appellant argues that the Commonwealth failed to establish sufficient evidence for indecent assault under 18 Pa.C.S.A. § 3126(a)(1). In evaluating a challenge to the sufficiency of the evidence supporting an adjudication of delinquency, our standard of review is as follows:

> When a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof beyond a reasonable doubt. When considering a challenge to the sufficiency of the evidence following an adjudication of delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth.

> In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.

> The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a defendant's innocence. Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth.

In re A.V., 48 A.3d 1251, 1252-1253 (Pa. Super. 2012) (citation omitted).

> As an appellate court, we must review the entire record...and all evidence actually received[.] [T]he trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence. Because evidentiary sufficiency is a question of law, our standard of review is de novo and our scope of review is plenary.

In re C.R., 113 A.3d 328, 333-334 (Pa. Super. 2015) (citations and quotations marks omitted).

A juvenile may be adjudicated delinquent of indecent assault if he "has indecent contact with the complainant [or] causes the complainant to have indecent contact" with the juvenile, and the juvenile "does so without the complainant's consent[.]" 18 Pa.C.S.A. § 3126(a)(1).

Appellant contends that he initially had consent, and once he no longer had consent, he ceased all touching of A.S. Indeed, according to Appellant's testimony, A.S. not only invited Appellant to make contact, but also engaged in the contact consensually, led Appellant's contact, and only became upset with Appellant when he confirmed to her boyfriend what happened. Appellant concludes that the juvenile court, in its misguided emphasis on the Me Too Movement, erroneously failed to consider Appellant's intent:

- 12 -

> As the judge was focused on the Me Too Movement, [Appellant's] counsel is aware that having verbal consent is very important. It is a strong message of the Me Too Movement. In a criminal matter, however, we must look at the intent of the appellant. In this case, the Commonwealth did not establish that [] Appellant touched without consent.

Appellant's Brief at 16 (quotations omitted).

Appellant simply fails to appreciate the juvenile court's decision to believe the complainant. Notwithstanding the parlance of our times, "[t]his Court has long-recognized that the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant, despite contrary evidence from defense witnesses." See Commonwealth v. McDonough, 96 A.3d 1067, 1069 (Pa. Super. 2014) (citing Commonwealth v. Charlton, 902 A.2d 554, 562 (Pa. Super. 2006)); see also Commonwealth v. Davis, 650 A.2d 452, 455 (Pa. Super. 1994). This sufficiency standard also applies to juvenile delinquency adjudications.

A complainant's testimony alone is sufficient, because it is "within the province of the [juvenile court] as fact-finder to resolve all issues of credibility, resolve conflicts in evidence, make reasonable inferences from the evidence, believe all, none, or some of the evidence, and ultimately adjudge appellant [delinquent]." See Charlton, 902 A.2d at 562; see also In re C.R., supra.

In her testimony, A.S. stated that she never consented to Appellant's contact, that she twice swatted him away and mouthed the word "no" to him. N.T. at 9-13. The juvenile court's decision to believe A.S. means her testimony, by itself, provided sufficient evidence to find Appellant committed

the elements of indecent assault beyond a reasonable doubt. And because we must review the evidence in a light most favorable to the Commonwealth, as verdict-winner, Appellant's second claim also fails.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/24/2020