J-S43031-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: B.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: B.M., MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1380 EDA 2024 |

Appeal from the Dispositional Order Entered March 5, 2024
In the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-JV-0000185-2023

BEFORE:  BOWES, J., STABILE, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.:          **FILED FEBRUARY 25, 2025**

B.M. appeals from the dispositional order following her delinquency adjudication of two counts of harassment and one count of aggravated assault.[1]  B.M. challenges the sufficiency of the evidence for the aggravated assault charge and the finding of delinquency.[2]  After review, we affirm.

---

[1] ***See*** 18 Pa.C.S.A. § 2709(a)(1) (harassment); 18 Pa.C.S.A. § 2702(a)(5) (aggravated assault).

[2] B.M. was a minor and a high school student in March 2023 when she committed the acts that led to her delinquency charges.  Although she turned eighteen and graduated from high school in June 2023, the juvenile court retained jurisdiction over her.  ***See*** 42 Pa.C.S.A. § 6302 (defining "Child," in relevant part, as an individual who "is under the age of 21 years who committed an act of delinquency before reaching the age of 18 years"); Pa.R.J.C.P. 630, Comment ("The Juvenile Court has jurisdiction of a delinquent child if the child is under twenty-one years and committed an act of delinquency prior to reaching the age of eighteen." (citations omitted)); ***Commonwealth v. Armolt***, 294 A.3d 364, 372 (Pa. 2023).

In its opinion filed pursuant to Appellate Rule 1925(a), the juvenile court provided the following factual history:

> This case involves an incident which occurred on March 21, 2023 at Morrisville Middle/Senior High School in Morrisville, Bucks County. The incident involved B.M. having physical contact with two school staff members — Principal, Heather Brahan ("Ms. Brahan") and Assistant Principal, Brian Oberdick ("Mr. Oberdick"). Prior to the incident, B.M. had been engaged in a verbal altercation with another student. To keep the argument from escalating, school staff members secured the other student in a classroom and then blocked B.M.'s access to the classroom. B.M. was directed by a school staff member to walk away from the classroom and down the hallway. At first she complied, but then B.M. turned around and began making her way back toward the classroom. Multiple school staff members attempted to prevent B.M. from returning to the classroom, including Mr. Oberdick who B.M. pushed aside. Ms. Brahan, the last staff member between B.M. and the classroom, reached out and grabbed B.M. to stop her. In response, B.M. forcefully twisted and threw about her arms and elbows making hard physical contact with Ms. Brahan. Ms. Brahan hit her head on the wall and fell to the ground. The entire incident involving B.M. and Ms. Brahan was captured on video.

Juvenile Court Opinion (J.C.O.), 8/6/24, at 1.

After the incident, the Commonwealth filed a delinquency petition charging B.M. with two counts of aggravated assault and two counts of harassment. Ms. Brahan and Mr. Oberdick were the alleged victims. The juvenile court held the first part of the adjudicatory hearing on December 5, 2023, and heard testimony from Ms. Brahan and Mr. Oberdick for the Commonwealth. The video of the incident was entered into evidence without objection. The court also heard testimony from two witnesses for B.M.:

Elizabeth Witting, B.M.'s friend and schoolmate and Ms. Bolduc, a special education teacher.

At the conclusion of the testimony, the court found that the Commonwealth met its burden of proof for the two counts of harassment (one count against Mr. Oberdick and one count against Ms. Brahan) and for one count of aggravated assault against Ms. Brahan. The court also found as a matter of fact that B.M. had committed the delinquent acts which formed the basis of those offenses.

The juvenile court began the second part of the adjudicatory hearing on January 30, 2024. The court entered a YLS Assessment Summary (the YLS) for B.M. into evidence without objection. Juvenile Probation Officer Richard Carbo (Officer Carbo) testified that, although B.M. had scored "low" for total risk/need level on the YLS, B.M. would benefit from treatment and supervision. B.M. testified that she graduated high school a few months after the incident, was living with her mother, was employed and working thirty to thirty-five hours per week, and had not had any police contact since the incident. B.M. stated that she had applied for a medical marijuana card and expected to receive it soon. The hearing was continued, to wait for a physical copy of B.M.'s medical marijuana card.

The hearing resumed on March 5, 2024, and B.M. and Officer Carbo testified again. The juvenile court adjudicated B.M. delinquent on two counts of harassment and one count of aggravated assault. The court found that B.M. needed treatment, specifically as it related to her trauma and anger

- 3 -

management. The court imposed a disposition which placed B.M. on indefinite probation and required her to comply with the standard conditions of probation, have no contact with the victims, write letters of apology, attend an empathy class, continue to work full time or further her education, take an anger-management class, and participate in specific therapy.

After filing post-dispositional motions, which the juvenile court denied, B.M. timely filed this appeal. She presents the following two issues for our review:

> 1. Was the evidence insufficient to establish beyond a reasonable doubt that [B.M.] committed the crime of aggravated assault where the Commonwealth failed to prove beyond a reasonable doubt that she acted intentionally or knowingly?
>
> 2. Was the evidence insufficient to support a finding of deliquency [sic] where the Commonwealth failed to establish that [B.M.] was in need of treatment, rehabilitation or supervision?

B.M.'s Brief at 11 (capitalization adjusted).

We begin by observing our standard of review when evaluating the sufficiency of the evidence supporting an adjudication of delinquency:

> When a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof beyond a reasonable doubt. When considering a challenge to the sufficiency of the evidence following an adjudication of delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth.
>
> In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most

- 4 -

favorable to the Commonwealth, and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.

The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a defendant's innocence. Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth.

*Interest of D.J.B.*, 230 A.3d 379, 386 (Pa. Super. 2020) (citation omitted).

Additionally:

As an appellate court, we must review the entire record…and all evidence actually received[.] [T]he trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence. Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary.

*Id.* at 387 (citation omitted).

B.M.'s first appellate issue challenges the sufficiency of the evidence supporting the aggravated assault charge.[3] A juvenile may be adjudicated delinquent of aggravated assault if she:

(5) attempts to cause or intentionally or knowingly causes bodily injury to a teaching staff member, school board member or other employee, including a student employee, of any elementary or secondary publicly-funded educational institution, any elementary or secondary private school licensed by the Department of Education or any elementary or secondary parochial school while acting in the scope of

_____

[3] B.M. does not challenge the two harassment charges on appeal.

- 5 -

> his or her employment or because of his or her employment relationship to the school

18 Pa.C.S.A. § 2702(a)(5).

B.M. does not contest that Ms. Brahan was a school employee acting in the scope of her employment at the time of the incident. *See id.* B.M. also does not contest that Ms. Brahan suffered bodily injury. *See* 18 Pa.C.S.A. § 2301 (defining "bodily injury"). B.M. only challenges the *mens rea* element of this offense *i.e* whether the Commonwealth proved that she intentionally or knowingly caused bodily injury to Ms. Brahan. *See* 18 Pa.C.S.A. § 2702(a)(5).

A person acts intentionally with respect to a material element of an offense when, "if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result." 18 Pa.C.S.A. § 302(b)(1)(i). A person acts knowingly with respect to a material element of an offense when, "if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result." 18 Pa.C.S.A. § 302(b)(2)(ii).

B.M. contends there was insufficient evidence to prove that she intended to cause, or was aware that it was practically certain that her conduct would cause, bodily injury to Ms. Brahan. *See* B.M.'s Brief at 18, 22. B.M. asserts that after being grabbed by Ms. Brahan, she flailed her arm one time to get away. *See id.* at 18, 21-22. According to B.M., she did not engage in the type of continued physical violence that our Court has previously found to be sufficient evidence of intent. *See id.* at 18. Instead, her actions amounted

to mere recklessness at most. *Id.* at 19. B.M. cites the video of the incident and the testimony of the witnesses to support her argument that she did not punch Ms. Brahan, but instead simply flailed her arm one time. *See id.* at 19-22.

When reviewing the evidence in the light most favorable to the Commonwealth, the evidence is sufficient for a finding of aggravated assault. The video shows that after staff separated B.M. and the other student, B.M. initially walked one way down the hallway. She then turned around and came back towards the classroom with the other student. There were several people in the hallway, including Mr. Oberdick and Ms. Bolduc, who both unsuccessfully attempted to block B.M.'s path. B.M. moved past Mr. Oberdick and Ms. Bolduc and continued down the hallway. Ms. Brahan then attempted to block B.M.'s path. As B.M. moved around Ms. Brahan, Ms. Brahan reached out and grabbed B.M. from behind. B.M. then twisted around and threw her arms up multiple times in the direction of Ms. Brahan, who hit the wall and fell to the floor. As Ms. Brahan fell, Mr. Oberdick stepped between B.M. and Ms. Brahan, put his arms around B.M., and moved her across the hallway. B.M. initially continued to struggle and attempted to move back towards Ms. Brahan, but then stopped.

Contrary to B.M.'s characterization, the video does not indicate that she simply flailed her arm one time. *See* B.M.'s Brief at 18, 21-22. Instead, the video supports the juvenile court's determination that, while in close physical

- 7 -

contact with Ms. Brahan, B.M. violently twisted and threw her arms and elbows around. *See* J.C.O. at 20.

Additionally, the testimony of the witnesses indicates this was more than mere recklessness. The testimony reflects that B.M. was determined to reach the other student. Ms. Bolduc stated that B.M. was in a verbal altercation with another student. *See* N.T., 12/5/23, at 49-50. Ms. Witting testified that she went with B.M. into the hallway to prevent B.M. from fighting someone. *See id.* at 45-46. Ms. Brahan and Mr. Oberdick testified that B.M. was screaming and trying to push past the adults in the hallway. *See id.* at 9-13, 26-27.

Regarding the contact itself, Ms. Bolduc testified that B.M. threw her arms up in the air. *Id.* at 51. Mr. Oberdick testified that B.M. made hard, physical contact with Ms. Brahan, in what looked like B.M. shoving Ms. Brahan with one arm.[4] *See id.* at 31, 35. Notably, the juvenile court found this testimony to be credible. J.C.O. at 20, n. 10.

The only contradictory evidence was Ms. Witting's testimony that Ms. Brahan grabbed B.M. and then tripped and fell to the floor. N.T., 12/5/23, at 45. However, the juvenile court did not find this testimony to be credible. J.C.O. at 20, n. 10.

Significantly, the juvenile court, as the factfinder, was free to believe all, part or none of the evidence presented, including the differing testimony.

---

[4] Although Mr. Oberdick's testimony at the hearing differed from his written statement where he indicated that Ms. Brahan slipped, this discrepancy is irrelevant because the court found his hearing testimony to be credible. Exhibit D-1; *see* N.T., 12/5/23, at 32-34; *see also* J.C.O. at 20, n.10.

*See D.J.B.*, 230 A.3d at 387 (citation omitted).  Furthermore, the facts and circumstances need not be absolutely incompatible with a defendant's innocence.  *See id.* at 386 (citation omitted).  "Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth."  *Id.* (citation omitted).  Therefore, it was the role of the juvenile court, not this Court, to determine which evidence to believe and to resolve any questions of doubt.

When reviewing the video and testimony in the light most favorable to the Commonwealth, we cannot say that "the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth."  *Id.* (citation omitted).  The evidence supports the juvenile court's determination that, at a minimum, B.M. was aware that her conduct (violently twisting and throwing her arms around when in close contact with Ms. Brahan near the hallway lockers and wall) was practically certain to cause the result (Ms. Brahan suffering bodily injury).  *See* 18 Pa.C.S.A. § 302(b)(2)(ii).  Thus, the evidence was sufficient to meet the *mens rea* element of aggravated assault—that B.M. knowingly caused bodily injury to Ms. Brahan.  18 Pa.C.S.A. § 2702(a)(5).  B.M.'s first issue merits no relief.

In her second appellate issue, B.M. challenges the sufficiency of the evidence that she needed treatment, supervision, or rehabilitation.  After determining that a juvenile committed the relevant acts for which the juvenile

is alleged to be delinquent, the juvenile court "shall then proceed . . . to hear evidence as to whether the child is in need of treatment, supervision or rehabilitation, as established by a preponderance of the evidence[.]"  42 Pa.C.S.A. § 6341(b).

Our Supreme Court has confirmed that the requirement for a delinquency adjudication is twofold; "the juvenile court must (1) determine that the juvenile has committed a delinquent act, *and* (2) determine that the juvenile requires treatment, supervision, or rehabilitation."  *Commonwealth v. M.W.*, 39 A.3d 958, 966 (Pa. 2012).  "A determination that a child has committed a delinquent act does not, on its own, warrant an adjudication of delinquency."  *Id.*

This is true even in the case of a felony; although a felony presumptively supports a finding that a juvenile is in need of treatment, supervision, or rehabilitation, the juvenile court must still make that finding after allowing for other evidence.  *See id.* at 966, n. 9.  Nevertheless, "[i]n the absence of evidence to the contrary, evidence of the commission of acts which constitute a felony shall be sufficient to sustain a finding that the child is in need of treatment, supervision or rehabilitation."  42 Pa.C.S.A. § 6341(b).  We review the juvenile court's findings under the second part of the delinquency adjudication for an abuse of discretion.  *See Interest of C.B.*, 241 A.3d 677, 686 (Pa. Super. 2020); *cf. In re T.L.B.*, 127 A.3d 813, 819 (Pa. Super. 2015).

Instantly, the juvenile court found that B.M. had committed the alleged crimes, including aggravated assault which was a second-degree felony.  The

court then held a separate hearing to determine if B.M. needed treatment, supervision, or rehabilitation. J.C.O. at 23. The court considered the evidence B.M. presented that she did not need treatment, which included her progress since the incident and the positive circumstances in her life. *See id.* The court also considered the contrary evidence including, among other things, the nature of her offenses, and her behavior, trauma, and attitude. *See id.* at 23-25. The court concluded that "B.M. had not rebutted the statutory presumption and was in need of treatment and required supervision to assure such treatment occurred." *Id.* at 23. Thus, the court adjudicated B.M. delinquent.

B.M. challenges the juvenile court's finding and argues that the Commonwealth did not present any evidence regarding her need for treatment, supervision, or rehabilitation, and that her evidence rebutted the statutory presumption. *See* B.M.'s Brief at 24.

Based on the record before us, we discern no abuse of discretion in the juvenile court's finding that B.M. was in need of treatment. B.M.'s aggravated assault charge was a second-degree felony. Absent evidence to the contrary, this alone created a presumption that she needed treatment, supervision, or rehabilitation. *See* 42 Pa.C.S.A. § 6341(b).

Here, Officer Carbo testified that although B.M. had scored as "low" on the YLS, he felt she would benefit from treatment and supervision given the seriousness of the alleged felony offense and B.M.'s prior history. *See* N.T., 1/30/24, at 6; N.T., 3/5/24, at 9. B.M. discounts Officer Carbo's opinion partly

- 11 -

because her history consisted of only one prior adjudication. **See** B.M.'s Brief at 25. However, it was the juvenile court's job as the factfinder, not this Court's job, to weigh the evidence. **See D.J.B.**, 230 A.3d at 387 (citation omitted).

B.M. also argues that the YLS determined she was a "low risk." B.M.'s Brief at 24. However, the juvenile court observed that the YLS contained a professional override which raised B.M. to a moderate risk level. This was due to the seriousness of the instant crimes, B.M.'s prior trauma, and her prior history with juvenile court. YLS Assessment Summary at 8 (unnumbered); **see** J.C.O. at 9.

Finally, B.M. claims she did not need treatment, supervision, or rehabilitation because she graduated from high school after the incident, completed community service, became employed, obtained her medical marijuana card, has had no police contact since March 2023, and is involved in therapy. B.M.'s Brief at 25-26. However, her testimony regarding her therapy was inconsistent. On the first day of the hearing, B.M. testified that she had not engaged in any anger management or aggression replacement training or any treatment. **See** N.T., 1/30/24, at 11. On the second day of the hearing, only a little over a month later, B.M. testified that she had been seeing a therapist for three months as a result of trauma from 2019. **See** N.T., 3/5/24, at 7-8. Notably, the juvenile court felt B.M. had exaggerated how long she had been in therapy, and B.M.'s recent interest in therapy was

"not based upon a genuine wish to address her trauma, but rather, merely represented an attempt to avoid being adjudicated delinquent." J.C.O. at 25.

We reiterate that, as the factfinder, the juvenile court was free to believe all, part or none of the evidence presented. *See D.J.B.*, 230 A.3d at 387 (citation omitted). The juvenile court believed that B.M. needed treatment to address her history of acting impulsively, being unable to control her anger, and engaging in aggressive conduct. *See* J.C.O. at 25. Based on the record before us, we cannot say that the court abused its discretion in finding that B.M. did not overcome the presumption that she was in need of treatment, supervision, or rehabilitation. *See* 42 Pa.C.S.A. § 6341(b); *see also C.B.*, 241 A.3d at 686. B.M.'s second issue merits no relief.

In sum, the Commonwealth presented sufficient evidence to establish beyond a reasonable doubt that B.M. committed the delinquent act of aggravated assault and to establish by a preponderance of the evidence that B.M. was in need of treatment, supervision, or rehabilitation. Thus, the Commonwealth proved both parts of the delinquency adjudication. We discern no error of law or abuse of discretion in the juvenile court's findings.

Order affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/25/2025