J-S32017-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: D.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 535 MDA 2025 |

Appeal from the Dispositional Order Entered March 20, 2025
In the Court of Common Pleas of Lackawanna County Juvenile Division at
No(s): CP-35-JV-0000321-2024

BEFORE:   LAZARUS, P.J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:            **FILED NOVEMBER 18, 2025**

D.S. appeals from the dispositional order following his delinquency adjudication of theft by unlawful taking – movable property, receiving stolen property, and unauthorized use of an automobile.[1]  D.S. challenges the sufficiency and weight of the evidence for the finding of delinquency.  After review, we affirm.

In its Appellate Rule 1925(a) opinion, the juvenile court provided the following factual history:

> This case involves a juvenile delinquency matter of one minor, D.S. (d.o.b. October [] 2010) [. . . .]

---

[*] Former Justice specially assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. § 3921(a) (theft by unlawful taking); 18 Pa.C.S.A. § 3925(a) (receiving stolen property); 18 Pa.C.S.A. § 3928(a) (unauthorized use of an automobile).

On the morning of October 16, 2024, Ms. [Yashira] Berges [(hereinafter, "Ms. Berges")] [. . .] left her residence to start and warm up her vehicle in preparation for transporting the children to school. After doing so, she went back into the residence with the vehicle running and the keys inside. Ms. Berges resides at this location with her sister, Ms. Crystal Marquez, (hereinafter, "Ms. Marquez") and their respective children. Upon Ms. Marquez returning to the residence in her own vehicle after transporting some children to daycare, she ran into the residence, screaming that someone got into Ms. Berges' vehicle and drove off.

Ms. Berges called the police, who responded to the residence. Ms. Berges shared a video captured by the Ring video camera system located on the residence. The Ring camera video clearly showed [D.S.] in the vicinity of the residence and the vehicle.[2] The responding Officer also took the eyewitness account of Ms. Marquez who described the person she saw entering Ms. Berges' vehicle as the same person who was captured on the Ring camera video.

Later that same day[,] Ms. Berges took a still photo from the Ring camera video and posted it to a social media web site, the Lackawanna County Scanner, a Facebook page that provides news and events in and around the Scranton area and Lackawanna County[,] seeking help in identifying the person in the photo who stole her vehicle.

---

[2] We observe that although the Ring Camera video was entered into evidence at the adjudicatory hearing, it does not appear in the certified record. We remind and caution D.S. that the burden is ultimately on the appellant to ensure that the record is complete on appeal. *See* Pa.R.A.P. 1921, Note. Failing to do so may result in waiver of any issue that this Court cannot properly review due to the incomplete record. Nevertheless, based on the facts of this case, we decline to find waiver. As explained *infra*, there is enough other evidence in the record, including the testimony of an eyewitness to the incident and other individuals, for this Court to determine that the evidence was sufficient to support D.S.'s delinquency adjudication. Additionally, the record contains a still image of the perpetrator that was taken from the Ring Camera video, and multiple witnesses testified about that image. Thus, the video itself would be superfluous here.

The photo posted by Ms. Berges on Facebook was viewed by School Security Officers Jennifer Esterline and Peter Matyjevich (hereinafter, Officer Esterline and Officer Matyjevich[], respectively) who are employed at the Scranton School District South Side Intermediate School as well as Ms. Tammy Nelson (hereinafter, "Ms. Nelson"), a paraprofessional in the emotional support classroom. All three (3) school individuals positively identified the person in the photo as [D.S.] They were very familiar with [D.S.] as he had attended the Scranton School District South Side Intermediate School for about 3-4 months from September 2023 to December 2023.

At this point[,] Officers Esterline and Matyjevich reached out to Scranton Police Detective Jason Hyler (hereinafter, "Detective Hyler") who was assigned the stolen vehicle case, and he attempted to contact [D.S.] at his residence [. . .] for questioning and to take his statement. [D.S.] was not at the residence and no further attempt was made by Detective Hyler to contact [D.S.,] at which time he filed a Written Allegation detailing the alleged charges asserted against [D.S.]

Lackawanna County Juvenile Probation filed a Petition Alleging Delinquency [. . . .]

Trial Court Opinion (T.C.O.), 6/30/25, at 1-3.

The delinquency petition originally charged D.S. with theft by unlawful taking – movable property and receiving stolen property, both third-degree felonies. The Commonwealth later amended the petition to add a charge of unauthorized use of an automobile, a second-degree misdemeanor. After an adjudicatory hearing, the court found that the Commonwealth had met its burden of proof beyond a reasonable doubt, and it adjudicated D.S. delinquent on all three charges.

The court later held a dispositional hearing, and it placed D.S. on probation for one year; required him to pay restitution, which he could earn

- 3 -

through community service; required him to report for processing and submit DNA; required his parents to pay the court costs and DNA processing fees; subjected D.S. and his parents to twenty conditions of supervision; and ordered D.S. to have no contact with any of the witnesses.

D.S. timely filed this appeal. He presents the following two issues for our review, which we reorder for ease of disposition:

> 1. Did the trial court err as a matter of law and abuse its discretion in adjudicating [D.S.] delinquent where the evidence presented was not sufficient to support such a finding?
>
> 2. Did the trial court err as a matter of law and abuse its discretion in adjudicating [D.S.] delinquent contrary to the weight of the evidence?

D.S.'s Brief at 4 (excess capitalization and suggested answers omitted).

We begin by observing our standard of review when evaluating the sufficiency of the evidence supporting an adjudication of delinquency:

> When a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof beyond a reasonable doubt. When considering a challenge to the sufficiency of the evidence following an adjudication of delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth.
>
> In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.

- 4 -

The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a defendant's innocence. Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth.

*Interest of D.J.B.*, 230 A.3d 379, 386 (Pa. Super. 2020) (citation omitted).

Additionally:

As an appellate court, we must review the entire record...and all evidence actually received[.] [T]he trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence. Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary.

*Id.* at 387 (citation omitted).

D.S.'s first appellate issue challenges the sufficiency of the evidence supporting all three charges: theft by unlawful taking, receiving stolen property, and unauthorized use of an automobile.

A juvenile is guilty of theft by unlawful taking or disposition "if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa.C.S.A. § 3921(a). Thus, for a juvenile to be adjudicated delinquent of theft by unlawful taking, the Commonwealth must prove three elements: "(1) unlawful taking or unlawful control over movable property; (2) ownership by another person of the movable property; and (3) intent to deprive permanently." *Commonwealth v. Carter*, 332 A.3d 867, 873 (Pa. Super. 2025) (citations omitted).

Similarly, a juvenile is guilty of receiving stolen property "if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa.C.S.A. § 3925(a). In this context, "receiving" means "acquiring possession, control or title, or lending on the security of the property." 18 Pa.C.S.A. § 3925(b). Thus, for a juvenile to be adjudicated delinquent of receiving stolen property, the Commonwealth must prove three elements: "(1) intentionally acquiring possession of movable property of another; (2) with knowledge or belief that it was probably stolen; and (3) intent to deprive permanently." *Carter*, 332 A.3d at 873 (citations omitted).

The crimes of theft by unlawful taking and receiving stolen property have similar elements. *See id.* at 873-74. "Accordingly, the crime of receiving stolen property is a lesser included offense of theft by unlawful taking[.]" *Id.* at 874 (citation omitted). "[W]here evidence supports a claim of receiving stolen property, the same evidence also supports a claim of theft." *Id.* (citation omitted). Thus, we will review these charges together.

We begin by observing that, in his brief, D.S. seemingly conflates his sufficiency and weight issues and at times makes sufficiency related arguments under his weight of the evidence issue. Nevertheless, we discern his relevant arguments for each issue below.

Related to sufficiency, D.S. argues that the "only" evidence presented was: 1) a Ring Camera video showing what was purported to be D.S. with a

covered face and hood over his head, walking by Ms. Berges' house, and 2) the school security officers' identifications of D.S., whom they had not seen in several months. *See* D.S.'s Brief at 14. However, no evidence placed D.S. inside the vehicle or operating it. *Id.* He asserts that there was no evidence that he took, exercised control over, or was in possession of the vehicle. *See id.* at 9, 11. According to D.S., the evidence presented never identified him but rather matched his clothing. *See id.* (citations omitted). He contends that "it is difficult to believe" that walking by a vehicle is proof beyond a reasonable doubt for the acts charged. *See id.* at 15. Because D.S. cannot be placed in the vehicle, none of the charges can survive. *See id.* Further, he claims that the Commonwealth's evidence indicates that there were at least three other perpetrators. *Id.* (citation omitted). Finally, he takes issue with the police department's investigation because the department made only one visit to his home before filing charges, and the department did not follow up with the Plymouth Police Department, which recovered Ms. Berges' car. *See id.* (citation omitted).

D.S.'s argument is belied by the record and fails to appreciate our standard of review. When viewing the evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, the evidence was sufficient for a finding of theft by unlawful taking and receiving stolen property.

Related to the first element of both charges, and contrary to D.S.'s claim, the Ring Camera video and the school security officers' identifications

of D.S. were not the only evidence presented. Significantly, Ms. Berges' sister, Ms. Marquez, an eyewitness to the incident, positively identified D.S. as the individual who took Ms. Berges' car. Ms. Marquez testified that when she got back to the residence that morning, she noticed that Ms. Berges' car was running and saw someone opening her car door. *See* N.T., 2/27/25, at 27. At first, she thought the person opening the door was Ms. Berges, but then she realized the person did not have Ms. Berges' physique, nor was the person wearing the clothes she had seen Ms. Berges in earlier that morning. *See id.* at 27, 37. She testified that the person entered her sister's car and drove off. *See id.* at 27. Ms. Marquez testified that she could identify the person she saw entering Ms. Berges' car, and she then identified D.S. *Id.* at 27-28. Moreover, she confirmed that she was certain D.S. was the person she saw enter Ms. Berges' car on the morning of the incident. *Id.* at 28.

Related to the Ring Camera video, Ms. Berges testified that the camera recorded the suspect walking past the house. *Id.* at 12. Ms. Marquez confirmed that the person in the video was the same person she saw enter Ms. Berges' car, as the two people were wearing the same clothing. *See id.* at 30.

As noted, Ms. Berges took a screenshot of the individual from the Ring Camera video and posted it on Facebook. From that post, two school security officers and a school paraprofessional, all of whom were familiar with D.S., testified that, when they saw the post, they identified D.S. as the person in the picture. *See id.* at 44, 46-47, 58 (Officer Esterline identifying D.S. as the

person in the Facebook picture, with 100% certainty); *Id.* at 61-63 (Ms. Nelson identifying the person in the Facebook picture as D.S., with 100% certainty); *Id.* at 67-68, 70 (Officer Matyjevich identifying the person in the Facebook picture as D.S. and confirming that he did not have any doubts about the identification). Detective Hyler also testified that the person in the picture was wearing a black puffy jacket, and on the day of the adjudicatory hearing, he saw D.S. in the hallway wearing a very similar jacket. *See id.* at 75-76.

Further, Officer Esterline testified that the location of the incident was in close proximity to where D.S. likely lived. *See id.* at 48. Detective Hyler testified that, although he had received a plethora of addresses for D.S., the most reasonable address that he believed D.S. lived at was one that was 3.5 blocks from the incident. *See id.* at 75. Additionally, two of D.S.'s siblings testified to being at the family's house on the day of the incident, and the address they provided for that house was the same address 3.5 blocks from the incident that Detective Hyler testified about. *See id.* (Detective Hyler naming an address for D.S. that was 3.5 blocks from the incident); *Id.* at 98 (D.S.'s sibling giving the same address as being the house where the family was located that day); *Id.* at 101 (D.S.'s brother giving the same address).

Thus, there was eyewitness testimony that D.S. entered and drove away in Ms. Berges' car. Additionally, the Ring Camera picture and resulting witness identifications placed D.S. at the scene of the incident. There was also evidence that D.S. likely lived near where the incident occurred. Collectively,

this evidence was sufficient to prove the first element of theft by unlawful taking—that D.S. unlawfully took and controlled movable property (the vehicle). *See Carter*, 332 A.3d at 873 (citations omitted). The evidence was also sufficient to prove the first element of receiving stolen property—that D.S. intentionally acquired possession of movable property (the vehicle) of another (Ms. Berges). *See id.* (citations omitted).

For the second element of theft by unlawful taking and receiving stolen property, Ms. Berges' uncontradicted testimony was that she did not give anyone permission to drive her car that morning, and she did not know D.S., nor had she ever seen him before. N.T., 2/27/25, at 19. She also testified that she had started her car and left it running with the keys in it to warm it up while she went back inside the house. *See id.* at 9-10. Thus, for theft by unlawful taking, there was sufficient evidence to show that another person (Ms. Berges) owned the movable property (the vehicle). For receiving stolen property, there was sufficient evidence to show that D.S. had knowledge or belief that Ms. Berges' vehicle was probably stolen. D.S. knew: 1) the vehicle he was entering was not his, 2) the owner of the vehicle (here, Ms. Berges) had not given him permission to take her vehicle, and 3) Ms. Berges had not given him the keys to operate the vehicle because the keys were already inside the vehicle when he entered it. Thus, there was sufficient evidence for the second element of theft by unlawful taking and receiving stolen property.

For the third element of both charges, intent to deprive permanently, Detective Hyler testified that the police found Ms. Berges' car the night after

the incident in Plymouth, Pennsylvania. *See id.* at 75. The vehicle was involved in an accident, and three male individuals fled from it. *Id.* Detective Hyler also testified that he became aware that D.S. was living in Luzerne County at the time of the hearing, which was the county where the police found the vehicle. *See id.* Thus, having been identified as the person who drove away in Ms. Berges' car without permission, this evidence, that the vehicle was not returned to her and was instead found the next night in a different county, was sufficient to establish D.S.'s intent to deprive Ms. Berges of her vehicle permanently.

We reiterate that "[t]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with a defendant's innocence." *See D.J.B.*, 230 A.3d at 386 (citation omitted). Further, the Commonwealth may sustain its burden of proving every element of each charge beyond a reasonable doubt by wholly circumstantial evidence. *See id.* (citation omitted). Thus, the above cited evidence was sufficient to prove, beyond a reasonable doubt, the charges of theft by unlawful taking and receiving stolen property.

Turning to the final charge, for a juvenile to be adjudicated delinquent of unauthorized use of an automobile, he must "operate[] the automobile, airplane, motorcycle, motorboat, or other motor-propelled vehicle of another without consent of the owner." 18 Pa.C.S.A. § 3928(a). To establish the *mens rea* element of this charge, "the Commonwealth must prove that the accused was at least reckless with respect to the owner's lack of consent to

- 11 -

the accused's operation of the vehicle." *Interest of K.G.*, 278 A.3d 934, 939 (Pa. Super. 2022) (citations omitted). However, merely possessing stolen property "is insufficient to permit an inference of guilty knowledge; there must be additional evidence, circumstantial or direct, which would indicate that the defendant knew or had reason to know that the property was stolen." *Id.* (citation omitted).

Here, again, when viewing the evidence in the light most favorable to the Commonwealth, the evidence is sufficient for a finding of unauthorized use of an automobile. Ms. Marquez identified D.S. as being both the person depicted in the Ring Camera video and the person who entered Ms. Berges' vehicle and drove away. Additionally, three other witnesses identified the still image from the Ring Camera video as being a picture of D.S., which placed him at the scene of the incident at the time the vehicle was stolen. Although Ms. Berges did not see who got into her vehicle, when she ran outside, she saw the vehicle driving away. *See* N.T., 2/27/25, at 10. Thus, there was sufficient evidence to show that D.S. operated the vehicle of another (Ms. Berges).

Regarding consent, as discussed above, Ms. Berges testified that she did not give anyone permission to drive her car that morning, that she did not know D.S., and that she had never seen him before. *Id.* at 19. Ms. Berges went outside that morning, started her car to warm it up, and left the keys inside when she went back into the house. *See id.* at 9-10. Therefore, D.S. would have known that the owner of the vehicle did not give him permission

to drive it, nor had the owner given him the keys. Thus, there was sufficient evidence to indicate that D.S. knew or had a reason to know that he was stealing Ms. Berges' vehicle, and that he acted at least recklessly with respect to her lack of consent. *See Commonwealth v. Carson*, 592 A.2d 1318, 1321 (Pa. Super. 1991) ("[A] conviction for unauthorized use of a vehicle must be predicated on proof that the defendant operated the vehicle without the owner's consent and that the defendant knew or had reason to know that he lacked the owner's permission to operate the vehicle." (citations omitted)). This evidence was sufficient to adjudicate D.S. delinquent of unauthorized use of an automobile.

In sum, when reviewing the Ring Camera picture and testimony in the light most favorable to the Commonwealth, we cannot say that "the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth." *D.J.B.*, 230 A.3d at 386 (citation omitted). The evidence supports the juvenile court's determination that D.S. committed theft by unlawful taking, receiving stolen property, and unauthorized use of an automobile beyond a reasonable doubt. D.S.'s first issue merits no relief.

In his second appellate issue, D.S. challenges the weight of the evidence. "An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the [juvenile] court." *Interest of D.J.K.*, 303 A.3d 499, 506 (Pa. Super. 2023), *appeal denied*, 315 A.3d 834 (Pa. 2024) (citation omitted).

A weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the grounds that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice. Thus, we may reverse the juvenile court's adjudication of delinquency only if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the juvenile court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, this Court is limited to a consideration of whether the juvenile court palpably abused its discretion in ruling on the weight claim. Hence, a juvenile court's denial of a weight claim is the least assailable of its rulings, as conflicts in the evidence and contradictions in the testimony of any witnesses are for the fact finder to resolve.

*Interest of N.A.P.*, 216 A.3d 330, 336-37 (Pa. Super. 2019) (citations omitted); *see also Commonwealth v. Banniger*, 303 A.3d 1085, 1095 (Pa. Super. 2023) (noting in a criminal case that, "[a]lthough weight of the evidence claims have been addressed in non-jury cases, there is a logical inconsistency in asking a trial judge to conclude that his non-jury decision shocked his own conscience" (citation omitted)).

On appeal, D.S. argues that there was evidence of at least three other individuals who were observed in the vehicle and fleeing from it by the Plymouth Police Department, and that none of those individuals were identified as D.S. D.S.'s Brief at 13. The Commonwealth only provided an identification of D.S. walking on the street by the vehicle. *Id.* Thus, he submits the evidence presented is "vague and uncertain enough to shock the conscience of the [c]ourt and []not support the adjudication of delinquency." *Id.* D.S. also argues that the Commonwealth did not meet its burden for each

of the charges. However, those arguments relate to the sufficiency of the evidence, which has already been addressed above, not the weight of the evidence.

Upon review, the juvenile court did not palpably abuse its discretion by concluding that the delinquency adjudication was not against the weight of the evidence. *See N.A.P.*, 216 A.3d at 336 (citation omitted). The court, sitting as fact finder, noted that Ms. Marquez, as an eyewitness, saw D.S. enter the vehicle and drive away. *See* T.C.O. at 11.[3] Additionally, "Ms. Berges[] produced Ring [C]amera video images of [D.S.], who looked directly into the camera, moments before the vehicle was stolen. *Id.* The court found that Officers Esterline and Matyjevich and Ms. Nelson were "very credible witnesses" and each of them individually recognized D.S. from the picture in Ms. Berges' Facebook post and knew for certain that it was him. *See id.* at 12. Further, the court acknowledged the testimony of D.S.'s witnesses but noted that they could not testify with certainty that D.S. was home when the incident occurred because they were all asleep at that time. *See id.* The court concluded, "the Commonwealth presented ample evidence that

_____

[3] Although not mentioned by D.S., we observe that the judge who wrote the juvenile court's opinion is not the same judge who presided over the hearings in this matter. The presiding judge had retired before it was time for the opinion to be prepared. This does not impact our analysis because our review of the sufficiency of the evidence is *de novo*. For the weight of the evidence, the presiding judge denied D.S.'s oral motion at the hearing regarding the weight of the evidence. *See* N.T., 3/20/25, at 2-3. From this we can deduce that her decision did not shock her own conscience. Further, the judge who wrote the court's opinion confirmed that the court's decision did not shock one's sense of justice. *See* T.C.O. at 13.

established [D.S.] committed each of the alleged acts with which he was charged beyond a reasonable doubt, and the decision does not shock one's sense of justice." *Id.* at 13.

We again reject D.S.'s contention that the Commonwealth only provided evidence of D.S. walking on the street by the vehicle. As explained above, although that evidence was certainly part of the Commonwealth's case, it also presented the eyewitness testimony of Ms. Marquez, who identified D.S. as the person she saw entering Ms. Berges' car on the morning it was taken. Further, although there was evidence of three males fleeing from the vehicle the next night, Detective Hyler testified there was no further description of the individuals in the Plymouth Police Department's report. *See* N.T., 2/27/25, at 83-85. Thus, because no evidence was presented as to who the individuals were, conceivably D.S. was one of them.

D.S. is essentially asking us to reweigh the evidence and reassess the witnesses' credibility. This we cannot do. As noted, "conflicts in the evidence and contradictions in the testimony of any witnesses are for the fact finder to resolve." *N.A.P.*, 216 A.3d at 336 (citation omitted). D.S.'s second issue merits no relief.

In short, the Commonwealth presented sufficient evidence to establish beyond a reasonable doubt that D.S. committed the delinquent acts of theft by unlawful taking, receiving stolen property, and unauthorized use of an automobile. Further, the juvenile court's delinquency adjudication was not against the weight of the evidence.

- 16 -

Order affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 11/18/2025